154 So.2d 685

Hattie SUMMERLIN

v.

Clarence Odell ROBINSON.

7 Div. 711.

Court of Appeals of Alabama.

June 4, 1963.

Wm. S. Halsey, Heflin, for appellant.

Knox, Jones, Woolf & Merrill, Anniston, for appellee.

PRICE, Presiding Judge.

Appellant sued to recover damages to her automobile and for personal injuries sustained as the result of a collision between the automobile she was driving and an automobile operated by the defendant, Clarence Odell Robinson.

The verdict of the jury was for the plaintiff, damages being assessed at $1000.00. The plaintiff's motion for a new trial was overruled. The appeal to this court is by the plaintiff, Hattie Summerlin. It is contended that the trial court erred in denying the motion for a new trial on the ground of the inadequacy of the damages assessed by the jury.

■ For, the purposes of this appeal the verdict is conclusive that appellee at least negligently caused plaintiff's damages. Seitz v. Heep, 243 Ala. 376, 10 So.2d 150; Austin v. Tennessee Biscuit Co. et al., 255 Ala. 573, 52 So.2d 190; Tennessee Coal, Iron and R. Co. v. Dunlap, 24 Ala.App. 515, 137 So. 320; Sims v. Warren, 32 Ala.App. 516, 27 So.2d 801.

■ Since the only complaint appellant can make on this appeal is the quantum of damages, "we will not consider as reversible error any ruling of the trial court bearing merely on the naked question of defendant's liability, and not affecting the amount of the damages recovered." See authorities cited supra.

■ Under this rule we would not consider ground 4 of the motion for a new trial setting up newly discovered evidence as to the respective positions of the automobiles subsequent to the collision. However, the assignment of error relating to this ground of the motion is not argued in brief and is deemed waived. Boles v. Bonner, 267 Ala. 342, 101 So.2d 544.

■ Plaintiff's injuries comprehended lacerations of both knees, the right requiring six stitches and the left two stitches, and a comminuted fracture of the lower one-third of the left humerus, the bone in the arm from the elbow to the shoulder. Dr. Allen testified that a comminuted fracture meant that the bone was broken into more than two pieces; that in a sense the bone was shattered "not a fine shattering but rather a third fragment was present on the x-ray." A hanging plaster cast was applied, which plaintiff was required to wear for a period of about eight weeks, at which time the cast was removed and the arm x-rayed. The doctor detected good callus formation, but still some separation of the fragments. There was very little capability of extension and flexion of the arm at this time and a new cast was applied. As of the date of Dr. Allen's deposition, June 14, 1962, the plaintiff could extend her arm through 135 degrees and flex her arm about a 45 degree angle, the angle measured along the upper arm. In his deposition the doctor stated there is a possibility that her arm will be permanently disabled but he could not accurately say to what extent; that she was totally disabled from August 14, 1961, the date of the wreck, until the date in December that she returned to work.

A written evaluation of plaintiff's injury, by Dr. Phillip Fagan, an Orthopedist, dated December 1, 1961, was admitted in evidence. Dr. Fagan stated the patient "will improve usually to a flexion of about 80 degrees and an extension of about 160 degrees. This is about average for this type of case. There will always be a permanent disability in the elbow and also some loss of the ability to supinate the hand, to what degree it is still too early to say."

The plaintiff testified she returned to work on the 11th day of December, 1961; that before the accident she worked as a tacker at Dorsey Manufacturing Company; that her earnings were $1.13 an hour, 45 to 50 hours a week; that after the accident she does "just jobs" such as side and in-seam, sew on bands and tack back carpet at Dorsey Manufacturing Company; that the percentage of production she was able to reach before the accident was from 96 to 105, and at the time of trial it was 78; that the tacker job on production would pay $1.25 per hour, but in her present job she was making only $1.16 per hour.

The evidence tended to show that plaintiff went from the scene of the wreck to the Tallapoosa Hospital where she stayed a very short time, four or five minutes, for x-rays and to suture one laceration, she then went to the Cedartown Hospital where

she remained overnight. The next day she returned to the Tallapoosa Clinic and stayed overnight.

It was stipulated that the damage to plaintiff's automobile amounted to $355.00. Plaintiff's evidence showed the following medical and hospital bills: Dr. Richard D. Allen, $127.00; Polk General Hospital, $56.-00; Tallapoosa Clinic, $43.00 and medicine $20.00. It was further stipulated that all the medical charges were reasonable charges, but appellee contends that the $20.00 claimed for medicine was not shown to be accurate or reasonable and not clearly shown to have been incurred because of the injuries sustained by plaintiff in the wreck, since Dr. Allen testified he had treated plaintiff before the trial for physical ailments not connected with the accident.

The plaintiff insists her testimony shows her loss of earnings amounted to either $960.50 or $864.45, depending upon whether it was computed for a 45 or 50 hour week, as her testimony showed she worked 45 or 50 hours per week at $1.13 per hour. Her further contention is that her evidence showed she had incurred charges of $290.00 for child care during her disability.

■ The rule is that "where the quantum of damages is not susceptible of an exact pecuniary estimate the amount to be allowed rests largely in the discretion of the jury; that trial courts will not set aside a judgment merely because in the opinion of the court it is excessive or inadequate, and, where the trial court has declined to set aside the verdict, the appellate court will not substitute its judgment for that of the trial court and jury unless the amount is so excessive, or so inadequate, as to indicate prejudice, passion, partiality, or corruption on the part of the jury." Nashville, Chattanooga & St. Louis Railway v. Crosby, 194 Ala. 338, 70 So. 7; Alabama Great Southern R. Co. v. Randale, 215 Ala. 535, 112 So. 112; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447; Alley v. Birmingham Electric Co. et al., 37 Ala. 240, 71 So.2d 108; Liles v. Montgomery Traction Co., 7 Ala.App. 537, 61 So. 480.

Counsel insists that the verdict was for less than the amount of damages susceptible of definite pecuniary measurement which the evidence shows plaintiff sustained, such as damage to her automobile, hospital and doctors' bills, child care, and loss of earnings, and that no account was taken of the physical pain and mental anguish resulting from her injuries.

■ We think there is merit in appellee's contention that since damages for child care were neither claimed in the complaint, nor was there evidence these charges were reasonable, the plaintiff was not entitled to recover special damages for child care. The burden was upon the plaintiff to claim such damages and to furnish proof from which the jury could determine the amount of damages to which she was entitled. Revel v. Prince, 37 Ala.App. 457, 69 So.2d 470.

■ It is well settled that in a personal injury suit plaintiff is permitted to prove loss of commissions or earnings during the period of disablement, not as a proper measure of damages, but on the theory that plaintiff's resulting loss of time is to be considered by the jury in aiding them in estimating just compensation for being prevented by the injury from engaging in his work. Wilson & Co. Inc. v. Sims, 250 Ala. 414, 34 So.2d 689; Birmingham Electric Co. v. Cochran, 242 Ala. 673, 8 So.2d 171; Bankers' Mortgage Bond Co. v. Sproull, 220 Ala. 245, 124 So. 907.

In 4 Sutherland on Damages, Sec. 1246, p. 4692, the following statement appears:

"If the injured person was under employment at fixed wages or salary the amount of loss during a reasonable term of engagement, or the temporary duration of such disability, may be readily determined, * * *."

■ We are of the opinion the evidence of the value of time lost by the plaintiff was not conclusive, but the issue of the amount of earnings lost subsequent to the accident was a question solely for the

jury under the evidence. It cannot be presumed on appeal that this element of damages was ignored by the jury merely because the verdict was not for a larger amount.

We are unable to say that the amount of the verdict was the result of bias, passion or other improper motive on the part of the jury. After a careful consideration of the evidence we cannot say the trial court erred in refusing to grant the plaintiff a new trial on the ground of the inadequacy of the verdict.

The judgment is affirmed.

Affirmed.