156 So.2d 633

James B. WALKER, Jr., pro ami,

v.

Mrs. Guy HENDERSON.

5 Div. 765.

Supreme Court of Alabama.

Sept. 26, 1963.

542

Hooton & Hooton, Roanoke, and Hare, Wynn, Newell & Newton, Birmingham, for appellant.

Knox, Jones, Woolf & Merrill, Anniston, for appellee.

HARWOOD, Justice.

This is an appeal by the plaintiff below from an order overruling plaintiff's motion for a new trial because of inadequacy of the damages assessed.

The suit below sought damages because of the alleged negligence of the defendant in driving a car into a horse being ridden by the plaintiff on a public road.

The jury returned a verdict in favor of the plaintiff and assessed his damages at $2,000, and judgment was entered pursuant to the verdict.

The verdict and judgment being in favor of the plaintiff, the only question involved in this appeal is the action of the lower court denying plaintiff's motion for a new trial because of the inadequacy of the damages. This being so, we will set forth only so much of the evidence as touches upon the nature and extent of the plaintiff's injuries.

The plaintiff was seventeen years of age at the time of the accident. Upon being taken to the Randolph County Hospital, he was attended by Dr. G. C. Ussery, whose qualifications as a physician and surgeon were admitted.

Dr. Ussery testified that when he first saw the plaintiff in the emergency room at the hospital, his blood pressure was 90/8, and he had a mild cerebral concussion. As to the injuries found by Dr. Ussery, we excerpt the following from Dr. Ussery's testimony:

"He had a laceration one and one-half inches wide, it was ragged and there was a round hole in the middle third of the right thigh. The hole was about three inches deep and extended down three and a half to five and a half inches under the skin into the muscle on the leg.

\* \* \* \* \* \*

"He had contusion of the muscles of the back and the right shoulder \* \*.

\* \* \* \* \* \*

"At that time, he was what I would call a normal, healthy boy, a Senior High School student. And now, he has a injury that he has the loss of part of the function of the right leg. He limps, he has a loss of ego, and he has been affected that way.

\* \* \* \* \* \*

"Well, the symptoms, now on October 16, 1961, he came to my office at that time and he had an absence of sensation at the right medial aspect of the calf of the leg and the foot. He had a hypo-thesia— * * * lack of sensation anterior surface of the right thigh. Also, he had a weakness in the right leg, and a weakness of the quadriceps muscle, which made him where he was unable to extend the leg, flex it. * * * He could bend it but he couldn't bring it back out.

* * * * * *

"Yes, sir, I put the brace on him. * * * He has worn out one. That second one is a new one.

* * * * * *

"Yes, the right leg is atrophied, it is just shrunken up.

* * * * * *

"Now, in my opinion, I think that he has a pressure on the third lumbar disc in his back. That is what these leg symptoms are, and the symptoms he gave are classical of the condition."

The doctor further testified that the plaintiff would suffer pain from his injuries, some days the pain might be light and on other days it might be severe.

In the doctor's opinion the injuries to the plaintiff are permanent, and there has been no improvement in the past twelve months. In fact, the plaintiff's condition is worse now than it was twelve months ago. In addition to Dr. Ussery, the plaintiff has been seen by Drs. Fagan and Taylor in Anniston, Dr. Agouri of Columbus, Georgia, and Dr. Galbraith in Birmingham, and by Dr. Norred, a Chiropractor.

As to his physical condition and suffering since his injuries, the plaintiff testified as follows:

"I have suffered ever since the wreck happened, all over. When I was first admitted to the hospital, I was in so much pain I was almost out of my head. And ever since, my back and legs have almost killed me, in constant pain all the time * * * I have to wear a left heel in my left shoe to make my left leg as long as my right one.

* * * * * *

"My hip hurts all the time. I have a constant snapping in it, * * * It bursted a gash almost to the bone on my knee.

* * * * * *

"My hip hurts every time I step on it. I don't know what is wrong with it. It is just pain in it every time I put any weight on it * * *.

* * * * * *

"All the muscles up and down the back of my leg after I was hurt, swelled into knots something like that (indicating) all up and down the back of them. The muscles were jerked and twisted into knots that big (indicating) and all up and down my back, the muscles were pulled loose on both sides, is the reason I have to wear that brace. And both of my shoulders—when I was in the wreck, it drove both of them up, they were swollen and bruised up bad. I had a lump on my head and the leaders in the back of my neck were swollen and twisted and jerked, and I have a lot of pain up there. And from my head to my feet was nothing but a solid sore."

Mr. Walker, father of the plaintiff, testified that before the accident the plaintiff drove a school bus as a substitute driver, but since the accident "he can't hardly get about" and "hasn't done a thing." We note here that no evidence was introduced tending to show the plaintiff's earnings, if any, as a substitute school bus driver, though M. B. Wallace, Superintendent of Schools for the City of Roanoke, testified that the plaintiff drove a school bus "quite a bit."

The plaintiff's original hospitalization was for 16 days. Subsequent stays in the hospital were necessary, and altogether the plaintiff has spent some 63 days in the hospital because of his injuries.

In addition the plaintiff has had to visit Dr. Ussery some 16 times, has made five trips to Anniston and Birmingham, and two trips to Columbus, Georgia, for medical consultation. The costs of these trips were not shown, the plaintiff testifying he did not know what his traveling expenses were.

The plaintiff's hospital and medical bills at the time of trial totaled $1,656.31. Subtracting this out of pocket money from the $2,000 assessed as damages, leaves $343.69 as the amount of damages assessed for the injuries, permanent physical impairment and pain and suffering.

Section 276, Title 7, Code of Alabama 1940, provides that motions for new trials may be granted because of excessive or inadequate damages.

■ The power of trial courts to set aside verdicts, while inherent in order to prevent irreparable injustice, is a power hesitantly exercised because of the solemnity of a jury verdict regarded in background of that most precious of rights, the right of trial by jury. "The power should be exercised only when it affirmatively appears that the substantial ends of justice require the examination of the facts by another jury." Cobb v. Malone, 92 Ala. 630, 9 So. 738.

■ The rule is strengthened in the presumption accorded the correctness of a verdict when the presiding judge denies a new trial. Cobb v. Malone, supra.

These rules are not inflexible, and this inflexibility but illustrates the well remembered admonition of the late and beloved Dean Albert J. Farrah, stated repeatedly in almost every lecture, that "Out of facts the law arises."

In reversing a judgment of the lower court denying a motion for a new trial because of the inadequacy of the damages, the late Justice Bouldin, in Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447, wrote:

"Nor is it necessary that the court should inquire and declare what wrongful influence, or failure of duty in the consideration of the case, has wrought a gross miscarriage of justice.

"For reasons of public policy, the deliberations of the jury cannot be invaded to find what motive or influence worked the mischief. The record may or may not shed light on the subject.

"*The internal evidence, the verdict itself, in the light of the facts clearly disclosed by the evidence, usually furnishes the determining data.*

"Mr. Justice Sayre, dealing with a case where the court sitting as a jury had rendered a judgment which 'must have been the result of inadvertence,' wisely said: *'This court deals with results.'*

"Accordingly, speaking of prejudice, partiality, etc., in Alabama Great Southern R. Co. v. Randle, 215 Ala. 535, 112 So. 112, 113, Mr. Justice Somerville decided: 'This rule does not deny that there may be cases, even of injuries not measurable by any legal standard, where the proven injuries are *so severe and extensive that a court would be fully justified in setting aside a grossly inadequate verdict*; that is, one which fails to give substantial compensation for substantial injuries.'

"This holding was quoted and approved in the late case of Jackson v. Roddy, 224 Ala. 132, 139 So. [354] 355.

"The basic reason for disturbing the verdict of a jury because of excessive or inadequate damages is precisely the same as for disturbing it because not supported by the evidence, or because opposed to the clear and convincing weight of the evidence. In the one case the inquiry is directed to one feature of the verdict; the damages awarded." (Emphasis ours.)

The facts of the present case place it within the influence of the Yarbrough case.

■ The undisputed evidence shows that the plaintiff sustained severe and substantial injuries. Sixty-three days of hospitalization have already been required. The muscles and nerves of his right leg have been damaged to the extent that the right leg has atrophied. Flexion has been lost in the leg to the extent that the plaintiff must wear an iron brace. He walks with a limp. This condition is permanent and, according to Dr. Ussery, has grown worse. The only reasonable inference from the evidence is that the plaintiff has endured great and severe pain from physical damage apparent to the eye. According to Dr. Ussery his symptoms are classical to the conditions present. There can be no question of feigning. He has been unable to work since the accident.

To conclude that the sum of $343.69 adequately compensated the plaintiff is to ignore the inadequacy inherent in the award when measured by the extent of the injuries inflicted, the extent of such injuries being shown by undisputed evidence.

Reversed and remanded.

LAWSON, GOODWYN and MERRILL, JJ., concur.